UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVYN BETANCOURT ULLOA,<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER,<br>Respondent. | No. 1:26-cv-03360-DAD-CKD<br><br><u>ORDER REOPENING THIS ACTION, GRANTING PETITION FOR WRIT OF HABEAS CORPUS, AND SETTING A HEARING REGARDING WHETHER SANCTIONS SHOULD BE IMPOSED</u><br><br>(Doc. No. 21) |

On August 11, 2026, the court ordered respondent to show cause why this action should not be reopened and petitioner's petition for writ of habeas corpus granted. (Doc. No. 22.) The court incorporates its prior discussion of the history of this action from its July 17, 2026 order dismissing petitioner's petition and its August 11, 2026 order to show cause. (Doc. Nos. 19, 22.) On August 13, 2026, respondent filed a response to the order to show cause addressing the court's questions and argued that the petition filed in this case should not be granted. (Doc. No. 23.) The court will first address petitioner's motion to reopen this action (Doc. No. 21) before addressing respondent counsel's conduct in this case.

/////

/////

**A. Motion to Reopen Case and Merits of Petition**

Respondent argues that petitioner's petition should remain closed because he has not exhausted the "available *Joseph* process to contest § 1226(c) coverage[.]" (Doc. No. 23 at 3.) It is obvious to the court that petitioner attempted to exhaust his administrative remedies and was unable to do so because of respondent's actions, specifically its calendaring of a *Matter of Joseph* hearing and denial of relief at that hearing on the basis that he was subject to detention pursuant to § 1225(b). *See generally Vrej S.G. v. Chestnut*, No. 1:26-cv-04428-MWJS, 2026 WL 20491816, at *5–6 (E.D. Cal. July 15, 2026) (finding that the exhaustion requirement should be waived because the petitioner attempted to request a second *Matter of Joseph* hearing and the immigration judge refused to provide it). Other courts and this one have recognized that requiring exhaustion where an immigration judge would find the petitioner subject to mandatory detention pursuant to § 1225(b) is futile because the immigration judge would deny relief on the basis of lacking jurisdiction under the "BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)[.]" *Alvarado Samayoa v. Warden, Golden State Annex Det. Facility*, No. 1:26-cv-04760-KES-SAB (HC), 2026 WL 2056619, at *1 n.1 (E.D. Cal. July 16, 2026); *see also Lopez Lopez v. Warden*, No. 1:26-cv-03556-DAD-CKD (HC), 2026 WL 1346694, at *1 n.1 (E.D. Cal. May 14, 2026) (reaching the same conclusion where the respondent argued that the petitioner was simultaneously subject to detention pursuant to § 1225 and § 1226(c)). The court therefore finds respondent's argument that exhaustion is required to be meritless and, in light of the long procedural history of this case and the court's many attempts to obtain respondent's compliance with basic statutory and due process requirements (*see* Doc. Nos. 14, 16, 19, 22), disingenuous.

In its order to show cause, the court explained that it appears that petitioner's detention purportedly pursuant to 8 U.S.C. § 1226(c) is a *post hoc* rationalization of an unlawful detention pursuant to 8 U.S.C. § 1225(b)(2)(A). (Doc. No. 22 at 2.) The court provided multiple citations to explain why such a *post hoc* rationalization cannot be the basis for petitioner's continued detention. *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1028 (N.D. Cal. 2025) ("As an initial matter, 'courts may not accept . . . *post hoc* rationalizations for agency action.'") (quoting *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1120 (9th Cir. 2010)); *see also Lopez*

*Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) ("The Court cannot credit Respondents' new position as to the basis for Mr. Lopez Benitez's detention, which was adopted *post hoc* and raised for the first time in this litigation."). Indeed, one district court has extended this principle to this exact factual situation where a petitioner was initially improperly detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and the respondent attempted to justify the unlawful detention with a *post hoc* rationalization that § 1226(c) applied. *Rueda Torres v. Francis*, No. 25-cv-08408-DEH, 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025) (granting the petitioner's petition and rejecting the respondent's § 1226(c) argument as a *post hoc* rationalization). Moreover, upon reviewing petitioner's Notice to Appear provided by respondent in its original opposition to petitioner's motion for temporary restraining order, petitioner was charged as inadmissible under INA § 212(a)(6)(A)(i) or 8 U.S.C. § 1182(a)(6)(A)(i). (Doc. No. 8-1 at 4.) Respondent originally argued that petitioner was subject to detention pursuant to 8 U.S.C. § 1226(c)(1)(A) because he was "inadmissible by reason of having committed" a crime involving moral turpitude as listed by 8 U.S.C. § 1182(a)(2)(A)(i)(I). (Doc. No. 8 at 2.) It is apparent that this was an impermissible *post hoc* rationalization.[1] *Cf. Gomez v. Blanche*, No. 2:26-cv-00770-JAD-MDC, 2026 WL 1398739, at *2 (D. Nev. May 19, 2026) (finding that the petitioner's detention pursuant to 8 U.S.C. § 1226(c) was not a *post hoc* rationalization where the notice to appear charged the petitioner as inadmissible due to his convictions despite the immigration judge's finding that the petitioner was subject to § 1225(b)(2)(A) detention).

Respondent stated that it does not determine *post hoc* statutory bases for detention but instead states "the correct statutory basis as the record matures." (Doc. No. 23 at 2–3.) Respondent cited no legal authority supporting the proposition that the "record matur[ing]" somehow renders its rationalization not *post hoc*.[2] Indeed, in the undersigned's view,

---

[1] The court discusses how this appears to have risen to the level of a misrepresentation on counsel's part below, but does not rely on that finding in granting petitioner relief.

[2] Here, the court emphasizes only that respondent has failed to demonstrate that its argument that petitioner is subject to mandatory detention pursuant to § 1226(c) was not *post hoc* reasoning. The court returns to this representation below to explain how counsel's apparent misrepresentations have materially affected this action.

respondent's representation appears to confirm that it is engaging in *post hoc* rationalization as part of an unlawful "detain first, justify later" approach to people's liberty. *See Ruvalcaba v. Blanche*, No. 2:26-cv-01312-RFB-BNW, 2026 WL 1362542, at *4 (D. Nev. May 15, 2026). In light of respondent's failure to provide any legal authority that its initial detention of petitioner was lawful or that its *post hoc* rationalization can cure that unlawful detention, the court will reopen this action and grant petitioner's petition. *Zurita Navarro v. Warden, Central Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR (HC), 2026 WL 2294963, at *3 (E.D. Cal. Aug. 10, 2026) (finding that the appropriate remedy for an initial unlawful detention in the immigration context was immediate release).

The court will also grant petitioner's petition because respondent did not comply with the statutory requirements of § 1226(c)(1)(A) by failing to charge petitioner in the Notice to Appear as inadmissible pursuant to 8 U.S.C. § 1182(a)(2) as is required for detention pursuant to 8 U.S.C. § 1226(c)(1)(A). As another judge of this court has explained in this regard:

> [A]s respondent acknowledges, the Notice to Appear with which petitioner was served does not charge him with inadmissibility under 8 U.S.C. § 1182(a)(2), but rather inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). A noncitizen alien possesses a due process right in having notice of "the charges upon which the [removability] proceeding is based," *Hirsch v. Immigr. & Naturalization Serv.*, 308 F.2d 562, 567 (9th Cir. 1962), and thus respondent could not consistent with due process, detain petitioner pursuant to 8 U.S.C. § 1182(a)(2), while only having given him notice that he was being charged as removable pursuant to sections 1182(a)(6). *See generally id.*; *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004); *see also Matovski v. Gonzles*, 492 F.3d 722, 738 (6th Cir. 2007) (holding "due process requires that a Notice to Appear contain all grounds for [the alien's] removability"); *Tigero Mora v. Chestnut*, No. 2:26-cv-00626-DJC-CSK, 2026 WL 1175243, at *3 (E.D. Cal. Apr. 30, 2026), *report and recommendation adopted sub nom. Tigero Mora v. Warden Chestnut*, No. 2:26-cv-00626-DJC-CSK, 2026 WL 1272963 (E.D. Cal. May 8, 2026) (relying on basis of removability set forth in Notice to Appear to establish what corresponding detention authority applies). On this basis, respondent fails to demonstrate that petitioner is, at present, lawfully detained as removable under 8 U.S.C. § 1182(a)(2), which would trigger the mandatory detention provision of 8 U.S.C. § 1226(c)(1)(A).

*Trujillo-Chavez v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-03216-DC-EFB (HC), 2026 WL 1724788 (E.D. Cal. June 15, 2026), *report and recommendation adopted*, 2026 WL 1893656 (E.D. Cal. July 1, 2026); *see also Miao v. Chestnut*, No. 1:26-cv-01271-KES-SKO (HC), 2026

WL 947020, at *2 (E.D. Cal. Apr. 8, 2026) (finding that the petitioner was not properly subject to mandatory detention pursuant to § 1226(c)(1)(A) in part because the petitioner was not charged with inadmissibility pursuant to § 1182(a)(2) in her Notice to Appear). Indeed, respondent in this district has previously taken the position that an administrative charge of inadmissibility pursuant to 8 U.S.C. § 1182(a)(2) is a necessary prerequisite for detention pursuant to 8 U.S.C. § 1226(c)(1)(A). *Colmenares-Pinto v. Warden of Golden State Annex Ice Det. Facility*, No. 1:26-cv-00812-DAD-SCR, 2026 WL 923804, at *2 (E.D. Cal. Apr. 6, 2026) (noting that the respondent conceded that "'the plain language of 8 U.S.C. § 1226(c)(1)(A) appears to indicate that an administrative charge under 8 U.S.C. § 1182(a)(2) is required'" for detention under that statutory section), *report and recommendation adopted*, No. 1:26-cv-00812-DAD-SCR, 2026 WL 1430913, at *2 (E.D. Cal. May 21, 2026). Accordingly, because, as described above, petitioner was not charged as inadmissible pursuant to § 1182(a)(2) in his Notice to Appear nor seemingly provided with an amended Notice to Appear following discovery of his conviction, the court determines that he is not properly subject to detention pursuant to 8 U.S.C. § 1226(c) on this independent basis.

**B. Respondent Counsel's Response to the Order to Show Cause and His Conduct Throughout This Action**

The court now turns to respondent counsel's response to its order to show cause. In its prior order, the court directed respondent to answer the following questions:

> 1. What detention authority, if any, was petitioner purportedly detained pursuant to on February 14, 2026?
>
> 2. At what time did respondent identify that petitioner may be subject to detention pursuant to 8 U.S.C. § 1226(c)?
>
> 3. Was petitioner or his immigration counsel ever informed prior to the filing of this habeas petition that it was respondent's position that he was subject to detention pursuant to 8 U.S.C. § 1226(c)?
>
> 4. Was petitioner informed prior to the filing of his habeas petition of his right to challenge his detention pursuant to § 1226(c) through a *Matter of Joseph* hearing?
>
> 5. Is it the practice of respondent's counsel to identify *post hoc* statutory bases for detention regardless of the initial detention

> authority identified internally by respondent as its justification for detaining a petitioner?
>
> 6. Where respondent's counsel identifies § 1226(c) as the basis for a petitioner's detention, is it the practice of respondent to only provide a *Matter of Joseph* hearing when directly ordered by the district court?

(Doc. No. 22 at 3–4.)

Respondent's counsel informed the court that, at his initial detention, petitioner was detained only pursuant to 8 U.S.C. § 1225(b)(2)(A). (Doc. No. 23 at 1.) Counsel now states that respondent was informed at a later date that petitioner was sentenced on his criminal charges on February 16, 2026. (*See* Doc. Nos. 8-2 at 5 (indicating that petitioner was sentenced on February 16, 2026); 23 at 1.) Respondent did not previously represent to the court that petitioner had been detained pursuant to 8 U.S.C. § 1225(b) and instead only represented that petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). (Doc. No. 8 at 1–2.) Respondent went so far as to request that the court "distinguish" its prior orders regarding detention pursuant to 8 U.S.C. § 1225(b) because petitioner was not being held pursuant to that statute. (*Id.* at 1.) This was a misrepresentation and it was one upon which the court relied in its May 7, 2026 order denying petitioner's motion for temporary restraining order. Accordingly, the court will set a hearing to determine whether respondent's counsel failed to discharge his duty of candor in this regard and whether that failure was material to the disposition of this action.

Respondent's counsel states that respondent became aware that petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) on February 16, 2026, following petitioner's sentencing. (Doc. No. 23 at 2.) Respondent's counsel represents that, to his knowledge, petitioner and his immigration counsel were never informed that respondent had taken the view that 8 U.S.C. § 1226(c) was the appropriate detention authority. (*Id.*) The court first notes that, to the extent that respondent represents that it "determined petitioner also fell within § 1226(c) mandatory detention for covered criminal noncitizens" on February 16, 2026, there is no evidence before the court to support this position. Respondent's counsel was assigned to this case on or about May 1, 2026 when the petition for writ of habeas corpus was filed (Doc. No. 1) and there is no declaration from an immigration official with personal knowledge of this subject stating that

respondent was aware of this alternative detention authority at that time. Instead, there is strong evidence that respondent itself was never "aware" that petitioner was purportedly subject to detention pursuant to 8 U.S.C. § 1226(c) because the immigration judge who presided over the July 20, 2026 *Matter of Joseph* hearing instead found that petitioner was subject to § 1225(b)(2)(A). (Doc. No. 21 at 2.) In light of this evidence, it appears that respondent's counsel has likely made a further misrepresentation in his August 13, 2026 response to the court's order to show cause by asserting that respondent's position has been that petitioner is subject to mandatory detention pursuant to § 1226(c) since February 16, 2026.

Next, respondent counsel's contention that the basis for immigration detention pre-removal order can "shift" without any required notice to a petitioner or his immigration counsel is not well-taken. (Doc. No. 23 at 2.) Respondent's counsel provides no legal authority for this proposition, which appears to stand in opposition to the authority cited above regarding *post hoc* reasoning and the requirement that a petitioner be provided with a Notice to Appear charging him with the relevant inadmissibility provision in order to trigger detention pursuant to § 1226(c). Respondent's counsel argues that "ICE does not advise on litigation strategy . . . it is in the discretion of petitioner's counsel to decide whether and when to request a *Joseph* hearing." (Doc. No. 23 at 2.) It is entirely unclear how petitioner's counsel is supposed to know when to request a *Joseph* hearing when respondent does not inform petitioner's counsel on what basis petitioner is purportedly removable. The court cannot find on this record that respondent did in fact fail to provide any notice to petitioner or his counsel regarding what charges of inadmissibility or detention authority petitioner was faced with because respondent's counsel has failed to provide any evidence in this regard. Instead, the court only notes this to highlight how respondent's initial misrepresentation has been compounded with the result being months of unlawful detention of petitioner.

In response to the court's question of whether it is the practice of respondent's counsel to identify *post hoc* statutory bases for detention, counsel states that it is his practice "to state the correct statutory basis as the record matures." (Doc. No. 23 at 2–3.) First, counsel does not explain how *ad hoc* shifting the applicable detention authority as part of a litigation strategy is not

*post hoc* reasoning, despite the court's specific citations explaining why it does.[3] Second, counsel's explanation fails to answer the court's question, which is whether counsel determines the appropriate detention authority regardless of his client's actual position. This failure to answer the court's question in a straightforward manner supports a conclusion that counsel is failing to discharge his duty of candor to the court, just as he apparently did in his initial opposition filed in this action.

Finally, in response to the court's question regarding whether respondent only provides *Matter of Joseph* hearings when directly ordered by the district court, counsel states that such hearings are scheduled upon request by the detained noncitizen or his counsel. (Doc. No. 23 at 3.) Counsel misapprehends the thrust of the court's question. The court's question was not whether respondent will set a calendar date nominally titled as a *Matter of Joseph* hearing, but instead whether respondent is only providing a substantive hearing addressing whether a petitioner is properly detained pursuant to 8 U.S.C. § 1226(c) when directly ordered to do so by a district court. The court asked this question specifically because the immigration judge in this case refused to provide a calendared *Matter of Joseph* hearing because petitioner was purportedly subject to 8 U.S.C. § 1225(b)(2)(A).

In short, the court's concern is that counsel has taken one legal position in this habeas proceeding (that petitioner is and was subject to § 1226(c) detention) despite knowing that the respondent was taking a contrary position (that petitioner is and was subject to § 1225(b)(2) detention) in immigration proceedings. In so doing, counsel was aware that any attempt for petitioner to receive a *Matter of Joseph* hearing was futile and yet argued that the court should require that petitioner pursue this exhaustion. (Doc. No. 8 at 3–4 (arguing that petitioner was required to request a *Joseph* hearing prior to filing a petition for habeas relief).) Even supposing that the detention authority applicable to petitioner could be "shifted" without notice to petitioner or the issuance of an amended Notice to Appear, counsel's misrepresentation regarding his

---

[3] The court also now has concerns regarding whether this is the practice of the United States Attorney's Office in the Eastern District of California more broadly, as alluded to in its August 11, 2026 order to show cause. (Doc. No. 22 at 2 n.1.)

client's actual position as to the detention authority petitioner was subject to ensured he would not get the process he would be due under § 1226(c), namely a *Matter of Joseph* hearing.

Based on the above recitation, the court must consider whether the imposition of sanctions are appropriate. "[T]he district court has a broad array of sanctions options at its disposal: Rule 11, 28 U.S.C. § 1927, and the court's inherent authority. Each of these sanctions alternatives has its own particular requirements, and it is important that the grounds be separately articulated to assure that the conduct at issue falls within the scope of the sanctions remedy." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). "Federal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them. By invoking the inherent power to punish bad faith conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction." *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) (internal citation omitted) (citing C*hambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Because the court will set a hearing regarding whether the imposition of sanctions is appropriate in this matter and what those sanctions should be, the court will not yet determine whether counsel's behavior in this action is sanctionable.

For the reasons above,

1. Petitioner's motion to reopen this action (Doc. No. 21) is GRANTED;
2. Petitioner's petition for writ of habeas corpus (Doc. No. 1) is GRANTED as follows:
    a. Respondent is ORDERED to immediately release petitioner Kevyn Betancourt Ulloa, A-File No. 241-677-406, on the conditions, if any, he was subject to prior to his February 14, 2026 detention;
    b. Respondent is ENJOINED and RESTRAINED from re-detaining petitioner, absent exigent circumstances, without providing a pre-deprivation hearing before an immigration judge, at which hearing respondent will bear the burden of demonstrating that petitioner poses a danger to the community or poses a risk of flight by clear and convincing evidence;

3. The Clerk of the Court is directed to serve a copy of this order on the California Center Detention Facility;

4. The court now SETS a hearing regarding whether and what sanctions are appropriately imposed on Special Assistant United States Attorney Jonathan Williams due to his conduct in this action for August 20, 2026 at 1:30 p.m. before District Judge Dale A. Drozd in Courtroom 4; and

5. Respondent's counsel is DIRECTED to ensure that a supervising attorney is present with him at the August 20, 2026 hearing.

IT IS SO ORDERED.

Dated: **August 14, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE